**In re The RIDGE II, a California Limited Partnership, Debtor.**

**Richard A. MARSHACK, Chapter 7 Trustee for The Ridge II, a California Limited Partnership, Plaintiff,**

v.

**MESA VALLEY FARMS L.P. a limited partnership; Worldwide Finance & Mortgage Corporation, an Illinois Corp., Robert Wenz; Harry J. Burk; Margaret T. Burk; Bruce A. McCandless; Jane McCandless; Chaunce A. "Arlie" Beane; Merrick Consultants, Ltd., a California Corporation and Windsor Investment Company an unknown entity and Horace Lee Walters, aka H. Lee Walters, Defendants.**

Bankruptcy No. SA 87–06062JB.
Adv. No. SA 91–4119JB.

United States Bankruptcy Court,
C.D. California.

Sept. 17, 1993.

Gary J. Hill, Timothy J. Trager, Hill & Sanford, Santa Barbara, CA, for defendants, except Lee Walters.

John A. Barclay, Barclay Law Corp., Newport Beach, CA, for plaintiff.

Harlene Miller, Pagter Law Corp., Santa Ana, CA, for Lee Walters.

## MEMORANDUM OPINION ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JAMES N. BARR, Bankruptcy Judge.

### JURISDICTION

Defendants filed a motion for summary judgment. This court has jurisdiction in this matter pursuant to 11 U.S.C. § 1334(a) (the district courts shall have original and exclusive jurisdiction of all cases under Ti-

tle 11), 28 U.S.C. § 157(a) (authorizing the district courts to refer all Title 11 cases and proceedings to the bankruptcy judges for the district) and General Order No. 266, dated October 9, 1984 (referring all Title 11 cases and proceedings to the bankruptcy judges for the Central District of California). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and § 157(b)(2)(E).

## FACTUAL BACKGROUND

In September, 1983, World Wide Finance and Mortgage Corporation ("WWFM"), Harry & Margaret Buck, Bruce & Jane McCandless and Chuance Beane (collectively the "Limited Partners") entered into a limited partnership agreement ("Agreement") with H. Lee Walters ("Walters") and Irving Jordan, as the General Partners ("Partners"), to form the "Ridge II" limited partnership (i.e., the debtor in this bankruptcy case, referred to hereinafter as "the Ridge" or "Debtor"). Apparently, thereafter, defendants Robert Wenz ("Wenz"), Merrick Consultants, Ltd., ("Merrick") and Windsor Investment Company ("Windsor"), became limited partners as well.[1]

The Ridge was created to acquire, develop, operate and eventually sell 1,155 acres of land, comprised of two separate parcels owned by the Limited Partners. One parcel consisted of 255 acres (the "Truck Stop Parcel"), and the other ("Parcel A") 900 acres. The Limited Partners also held record title to a 160 acre parcel ("Parcel B"), located near but not contiguous to Parcel A and the Truck Stop Parcel. The Ridge's right to purchase Parcel A and the Truck Stop Parcel from the Limited Partners was conditioned on county approval of land use plans for the respective parcels by a date certain and the Limited Partners' approval of the same. The Agreement provided that the Limited Partners would receive $2,650

for each acre they transferred to the Ridge under an approved land use plan.

In September 1984, the Ridge purchased the Truck Stop Parcel from the Limited Partners for $666,210 pursuant to the Agreement, following approval of a land use plan for that parcel. Subsequently, the Ridge improved 15 acres of that parcel with a motel, restaurant and truck and car service center. To that end, the Ridge obtained an $8,000,000 construction loan that was secured by a lien on the Truck Stop Parcel.

Confronted with financial problems, on October 5, 1987, the Ridge filed a Petition for Relief under chapter 11 of the Bankruptcy Code.[2] On June 23, 1989, a chapter 11 trustee was appointed. The case was subsequently converted to one under chapter 7 and on August 22, 1990, a chapter 7 trustee was appointed. On November 27, 1991, the chapter 7 trustee ("Trustee") filed the complaint herein seeking (a) to have Parcel A and Parcel B adjudged property of the estate under § 541, (b) turnover of that real property under § 542, and (c) and a judgment declaring the Limited Partners and Walters jointly and severally liable for an undetermined deficiency of estate assets to pay allowed claims against the bankruptcy estate pursuant to § 723(a). The Limited Partners filed a motion for summary judgment, and Walters filed a joinder thereto. At the hearing thereon I took both matters under submission.

## THE TRUSTEE'S ACTIONS ARE NOT BARRED BY STATUTES OF LIMITATIONS

The Limited Partners assert that the § 541 and § 542 claims are barred by the statute of limitations as to causes of action for breach of contract, under California

---

**1.** It is not clear from the evidence presented, if, when or how Wenz, Merrick and Windsor became limited partners of the Ridge. However, in the Points and Authorities presented by counsel representing Wenz, Merrick and Windsor (as well as the other Limited Partners) it is said that those three are within that group. The Trustee does not refute that in his response to the instant motion; but he does, apparently, ask that

Wenz be held liable to the bankruptcy estate to the extent that WWFM is held to be so liable (under the theory that WWFM is Wenz's alter ego).

**2.** All further statutory references are to the Bankruptcy Code [11 U.S.C. § 101 et seq.] unless otherwise indicated.

Code of Civil Procedure § 337(1), and that the § 723 claim is barred by Corporations Code § 15666 [Revised Limited Partnership Act].

■ The Trustee seeks adjudication of his interest in and right to possession of Parcel A and Parcel B. He seeks no damages for breach of contract. Therefore, California Code of Civil Procedure § 337(1) has no application here. As explained below, because I have determined that Parcel A and Parcel B are not property of the estate, I find it unnecessary to address whether the Trustee's § 542 action is time barred. However, I find persuasive the reasoning of the court in the case of *In re De Berry*, 59 B.R. 891, 898 (Bankr. E.D.N.Y.1986) in which it concluded that because a § 542 claim has no explicit limitation period, such action must be commenced within a reasonable time.

■ The Trustee's claim for recovery of alleged pre-bankruptcy payments to the Limited Partners from property of the Ridge, in September, 1985, is not time barred under § 15666(b) of the Revised Limited Partnership Act because such limitations period is inapplicable. By provision, the Agreement was governed by the Uniform Limited Partnership Act. In order for § 15666(b) to be applicable in this instance, there must have been written consent of all partners to operate under the Revised Limited Partnership Act. California Corporations Code § 15712(a)(1). Such unanimous consent did not occur and therefore § 15666(b) does not apply.

The Trustee seeks recovery of "... all payments received by said defendants relating to [Parcels A and B]," as part of his action for "an accounting" as to that real property. Such an action is not time-barred by California law. Still, the only theory espoused by the Trustee to justify an accounting and recovery of such payments is the estate's de facto ownership of Parcel A and Parcel B. Because I have determined that the Trustee has no interest in or right to Parcel A or Parcel B, the accounting action must fail as well, and with it, the claim to any payments "relating to" that property.

■ The § 723(a) claims are not time barred, either. The Trustee's claim under § 723(a) is a chose in action actionable under § 544(a). *In re Downtown Invest. Club III*, 89 B.R. 59, 65 (9th Cir. BAP 1988). Section 546(a) provides, in relevant part, that a § 544 action must be commenced the earlier of two years after the appointment of a Trustee under § 702, § 1104, § 1163, § 1302, § 1202 or the time the case is closed or dismissed. Here, the Trustee's complaint was filed within 2 years from when the chapter 7 trustee was appointed. Therefore, the Trustee's § 723 claim is not time barred. I decline to apply *In re Softwaire Centre International*, 994 F.2d 682 (9th Cir.1993) here because it is distinguishable from the case at bar. In *Softwaire Centre* the debtor filed a complaint more than two years after it filed chapter 11. The debtor, there, argued that § 546(a)(1) did not apply because no trustee had been appointed. Noting that, under § 1107, a debtor in possession is analogous to a chapter 11 trustee, the *Softwaire Centre* court concluded that the debtor's § 544 claim was time barred under § 546(a)(1) because the debtor was the functional equivalent of a trustee.

The facts in this case are clearly distinguishable. The *Softwaire Centre* case was not converted from a chapter 11 to chapter 7 and thus the court in *Softwaire Centre* was not called upon to address the effect of § 546(a)(1) in a case in which a debtor in possession is succeeded by a chapter 11 trustee who is then succeeded by a chapter 7 trustee as we have here. Section 546(a)(1) textually can be construed to provide a succeeding trustee a fresh two year limitations period in which to commence a § 544 action from the date of appointment. I find further support for that position in the case of *In re Downtown Invest. Club III*, wherein the appellate court noted that "The bankruptcy judge also erred in finding that to the extent a statute of limitations bars claims against [the debtor's general partner], conversion to chapter 7 would not revive the claim.... Bankruptcy Code § 348, which governs the effect of

conversion, does not apply [because the cause of action under § 723 was created by the Bankruptcy Code, and was not a claim belonging to the debtor], and the trustee's lawsuit under § 723 is not time barred." 89 B.R. at 65; *See also, In re SSS Enterprises, Inc.,* 145 B.R. 915, 918 (Bankr. N.D.Ill.1992) (construing the plain language of § 546(a)(1) to provide each trustee appointed under a different chapter of the Bankruptcy Code a fresh two year period in which to bring an avoidance action). Furthermore, from a policy standpoint, such construction protects and preserves the cause of action under § 723(a) for it only applies in a chapter 7 case, and cannot be pursued until a case is being administered under that chapter. *See* § 103(b). In addition, the extent and validity of a given § 723(a) claim cannot be fully assessed unless and until a given case is in a liquidation mode under chapter 7. Accordingly, I conclude that the Trustee's § 723(a) claim is not time barred, for the complaint asserting it was filed within two years after the chapter 7 trustee was appointed.

## THE ESTATE HAS NO COGNIZABLE INTEREST IN PARCEL A OR PARCEL B

■ The existence of a mere scintilla of evidence that a genuine issue may exist is not sufficient to justify denial of a motion for summary judgment. *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In order for the Trustee to defeat the Limited Partner's summary judgment motion, the Trustee must establish that the record supports a reasonable inference that the Ridge had a cognizable interest in Parcel A and Parcel B at the time this case was commenced. Because the record does not support that inference, the Limited Partners are entitled to judgment as to that property.

■ The Agreement provides the best evidence of whether Parcel A and Parcel B is estate property. California law controls the interpretation of the Agreement. Under California law, in discerning the parties contractual intent, courts look to the meaning of the words used in the contract, *Mission Valley East, Inc. v. County of Kern,* 120 Cal.App.3d 89, 98, 174 Cal.Rptr. 300 (1981), and may consider the nature and object of the contract as well as the preliminary negotiations and the circumstances under which it was made. *Western Camps, Inc. v. Riverway Ranch Enterprises,* 70 Cal.App.3d 714, 724, 138 Cal. Rptr. 918 (1977).

■ Under the Agreement, the Ridge's right to purchase Parcel A was conditioned upon county approval of a land use plan by December 11, 1984, and the limited partners' approval thereof. This condition was simply not met, and therefore, the Ridge never gained the right to purchase Parcel A. The Trustee's argument that the estate retains an equitable interest in Parcel A, sufficient to include it within the estate under § 541, is based solely on his interpretation of the Agreement, which I find to be without support. As to Parcel B, the fact that, at all relevant times, title thereto was held by the Limited Partners, the fact that it was not referred to in the Agreement, and the lack of proof that the Debtor had rights to that parcel under any other contract, provide sufficient evidence to establish that the Ridge did not acquire any rights to that parcel.

## THE FUNDS RECEIVED BY LIMITED PARTNERS ARE NOT RECOVERABLE

■ The Trustee seeks to recover $400,-000 [3] received by the Limited Partners from Walters in September, 1985 ("the Walters transaction"). The Trustee argues that it was an interest in the Truck Stop Parcel which was sold at that time (not a partnership interest), and that because the Ridge owned the Truck Stop Parcel, any proceeds obtained from the sale thereof belongs to the Ridge. More specifically, the Trustee argues that Walters purchased an interest in the Truck Stop Parcel from

---

**3.** The total consideration paid by Walters amounted to $1 million; $400,000 in cash and the balance financed at 10%. The trustee also seeks the interest paid to the Limited Partners to date.

the Ridge in September, 1985, and that payment of the proceeds thereof directly to the Limited Partners, was a partnership distribution. I find that in the Walters transaction, the Limited Partners sold to the Ridge Travel Center Partnership ("RTCP"), 40% of their 50% limited partnership interest in the Ridge. There was no sale or transfer to RTCP or to Walters by the limited partners (or by the Ridge) of any interest in the Truck Stop Parcel itself. The Ridge's 1985 tax return indicates that the Ridge did not transfer or distribute any real property in 1985. RTCP's 1985 K–1 tax form supports the conclusion that RTCP [i.e., Walters] purchased 40% of the limited partners' interest in the Ridge. In addition, the 1985 K–1 tax forms of each Limited Partner indicates that none of the limited partners received a distribution or return from the Ridge. The Agreement explicitly provides that the Limited Partners may transfer their individual interests in the Ridge, and the written contract evidencing the Walters transaction provided "the entire purchase price of $1,000,000 for the Project shall be distributed to the limited partners ...," which is exactly what occurred.

The Trustee points to a Land Sale Agreement of September 16, 1985, which provides for the sale of 15 acres of the Truck Stop Parcel to Walters, as sufficient evidence of the existence of a material issue of fact to warrant denial of the Limited Partners' motion for summary judgment on the question of whether they received a "partnership distribution" from the Debtor. However, the Trustee also acknowledges that he has no proof of the existence of a deed transferring title pursuant to that agreement, and in fact he has no other proof to substantiate his theory of a "sale" of the Debtor's property to Walters. All other evidence adduced in connection with the instant motion, points to the opposite conclusion.

I find insufficient evidence from which to reasonably infer that the Walters transaction was anything other than a sale of the Limited Partners' partial interest in the Truck Stop Parcel to Walters. Accordingly, summary judgment must be granted the Limited Partners on the Trustee's claim to the purchase price of those interests.

■ The Trustee also argues that the transfer of the Truck Stop Parcel to the Ridge, from the Limited Partners (in 1984), was not a "sale" of that parcel, but was, instead, a "contribution" to the Ridge partnership by the Limited Partners, and that, therefore, the payment of $2,650 per acre to the Limited Partners at that time was a "partnership distribution" (ostensibly recoverable by the Trustee). However, all the proof is to the contrary, and the Limited Partners are also entitled to summary judgment on that theory as well.

In all, the Trustee has raised no triable issues of fact as to the Limited Partners' liability for alleged distributions from the Debtor's assets, and as a matter of law, the Limited Partners are entitled to summary judgment as to all theories espoused by the Trustee in that regard.

## THE LIMITED PARTNERS, AS SUCH, ARE NOT LIABLE FOR A DEFICIENCY IN ESTATE ASSETS UNDER § 723

■ Under § 723(a), a trustee has a claim against a general partner of a partnership debtor for the deficiency of assets of the estate to pay all allowed claims arising from the partnership's operations.[4] The deficiency need not be precisely defined; for summary judgment could be awarded the Trustee in this instance, on the issue of liability, had that issue been properly disposed of here, leaving the exact amount of the recovery due the estate to a later time. *See In re Bell & Beckwith*, 112 B.R. 863, 868 (Bankr.N.D.Ohio 1990) (Federal Rule of Civil Procedure 56(c) permits

---

**4.** § 723(a) provides:

 If there is a deficiency of property of the estate to pay in full all claims which are allowed in a case under this chapter concerning a partnership and with respect to which a

general partner of the partnership is personally liable, the trustee shall have a claim against such general partner for the full amount of the deficiency.

Summary Judgment on the issue of liability despite the existence of genuine issues as to damages). In the context of defendants' motion here, the Trustee need only prove that there is a genuine question as to whether there will be a deficiency of assets to pay allowed claims. In their Answer to the Complaint, the Limited Partners admit such a deficiency exists. The Limited Partners, as such, have no liability for that deficiency; but Walters, WWFM and Wenz do not escape that liability by their motions for summary judgment.

The Trustee offered proof that the Limited Partners exercised control over the Ridge sufficient to justify cloaking the Limited Partners with general liability for partnership debts. However such proof is not sufficient to raise a genuine issue of material fact in this case, for the evidence is not sufficient to warrant a fact-finder's conclusion that any of the Limited Partners were, in fact, "general partners" under state partnership law as fully discussed below.

■ On its face, § 723(a) reaches only "general partners" of a debtor. Nevertheless, I have explored the limits of § 723(a) beyond its plain meaning because the arguments of the Trustee insinuate that such is required. I find precedent for referring to state law in analyzing § 723(a) because § 723(a) is, itself, conceptually based on state partnership law [5] and other Bankruptcy Courts have relied upon state partnership law in other contexts. For example, courts have looked to state law to define the term "general partner" for purposes of Bankruptcy Rule 1004(a), *In re Phillips*, 966 F.2d 926, 928 (5th Cir.1992) (Texas law which prohibits a bankrupt general partner from placing a partnership into bankruptcy proceedings under title 11 must be considered in conjunction with Bankruptcy Rule 1004(a)), and to determine the types of claims for which a general partner is personally liable for under § 723(a), *In re Mi-*

*ramar Mall Limited Partnership*, 152 B.R. 631, 633 (Bankr.S.D.Cal.1993) (since the Bankruptcy Code does not provide such definition and there is no federal partnership law, California partnership law must be considered).

The Trustee relies upon state law in asserting that because the Limited Partners exercised excessive control over the Ridge the Limited Partners should be adjudged general partners for § 723(a) purposes, but offers no support for that interpretation which would extend its reach beyond those who, are in fact, "general partners" of a debtor. Specifically, the Trustee argues that, among other things, the Limited Partners (1) participated in leasing/rental collection activities by the Limited Partners involving a 1,153 acre cattle grazing lease of land; (2) the Limited Partner's participated in certain negotiations to obtain financing for the Ridge; (3) undertook public relations regarding the Truck Stop Center, and (4) attempted to rezone certain of the Ridge's property. The Limited Partners offered evidence to refute the Trustee's proof on those points. However, even if I disregard all of the Limited Partners' evidence on those matters, and find extensive involvement in the Debtor's affairs by the Limited Partners, under California law, the Trustee has not raised a triable issue of fact as to the Limited Partners' liability.

■ Two theories have been recognized by state courts to strip limited partners of the protection of their limited liability for partnership debts. Under the "control" theory, courts will hold a limited partner to general partner liability if sufficient levels of control have been exercised by the limited partner such that the limited and general partner roles are indistinguishable. Jurisdictions which follow the "control" theory emphasize preservation of the integrity of the partnership's internal relationships. *Delaney v. Fidelity Lease Ltd.*, 526 S.W.2d 543, 545 (Tex.1975). In "reliance"

---

5. As recognized by one authority:
 The liability of the general partners under section 723(a) should be compared to that under section 40 of the Uniform Partnership Act [state law].
 *Collier on Bankruptcy*, 15th Ed., ¶ 723.02 (1992); *See also, Norton Bankruptcy Law And*

*Practice, Bankruptcy Code*, (1993) Editor's Comments to the Legislative History of § 723(a), p. 611 [§ 723(a) was amended by § 476(a) of the Bankruptcy Amendments Act of 1984 "to make it clear that the subsection did not create any obligations of a general partner not previously existing under state law".]

theory states, of which California is one, a limited partner can be held liable to the same extent as a general partner only as to those debts arising from transactions in which the creditor was led to believe that the limited partner was a general partner. *Western Camps, Inc. v. Riverway Ranch Enterprises,* 70 Cal.App.3d 714, 138 Cal. Rptr. 918 (1977); *See also, Mount Vernon Sav. & Loan Asso. v. Partridge Associates,* 679 F.Supp. 522, 526 (D.C.Md.1987). Applying California law here, I have concluded that even if § 723(a) reaches beyond those who are, in fact, "general partners" of a debtor, if the Trustee is to have a § 723(a) deficiency claim against the Limited Partners, the Trustee must establish that the subject deficiency, or some part thereof, arose from transactions in which a creditor was led to believe that the Limited Partners were general partners of the Ridge. The Trustee has presented no proof of such, and therefore has raised no triable issue as to the Limited Partners' liability under § 723(a).

On the other hand, the Limited Partners have proven that a limited partnership certificate was recorded in accordance with California law [6] which further supports a finding that the Limited Partners (except those noted below) are not subject to § 723(a) liability.

### SUMMARY JUDGMENT CANNOT BE GRANTED THE GENERAL PARTNERS ON THE TRUSTEE'S ACTION UNDER § 723

 Walters was a general partner of the Ridge from its inception until February 16, 1988 (i.e., four months after the commencement of this bankruptcy case), when he was replaced in that role by WWFM. In his joinder to the Limited Partners' Motion for Summary Judgment, Walters made no argument about his liability under § 723, as a replaced general partner, and although WWFM argued persuasively that it should have no liability as a limited partner, it presented no evidence or argument as to its liability as a general partner, and Wenz offered nothing to establish his freedom from liability under the alter ego theory (i.e., that WWFM is the alter ego of Wenz), espoused in the complaint.

The Trustee alleges that there is a $4,000,000 deficiency of assets in the estate to pay allowed claims. The evidence thereof is insufficient to warrant judgment against the general partners of the Ridge in a specific dollar amount.[7] In addition, neither Plaintiff nor Defendants have sufficiently explored whether both Walters and WWFM (and, perhaps Wenz) are liable to the estate under § 723; and the extent of any such liabilities. Therefore, I will deny Walters' summary judgment motion, and leave such questions, and their progeny, for trial or a later motion.

### CONCLUSION

The Trustee has failed to raise a genuine issue of material fact as to the inclusion of Parcel A and Parcel B into the bankruptcy

---

**6.** California Corporations Code § 15501 provides: "A limited partnership is a partnership formed by two or more persons under the provisions of Section 15502, having as members one or more general partners and one or more limited partners. The limited partners as such shall sign, acknowledge and record a certificate which contains specific and detailed information about the nature of the partnership and classification of the partners. Subdivision (2) thereof provides: "A limited partnership is formed if there is substantial compliance in good faith with the requirements of subdivision one." In the absence of substantial compliance with the foregoing filing requirements, a general partnership is formed and all the partners will be treated as general partners. *Security Pacific National Bank v. Matek,* 175 Cal.App.3d 1071, 1075, 223 Cal.Rptr. 288, 291 (1986); *Tiburon Nat. Bank v. Wagner,* 265 Cal.App.2d 868, 874–875, 71 Cal.Rptr. 832 (1968). However, the Ridge did comply with the requirements of California Corporations Code § 15501; and that alone, justifies the conclusion that the Limited Partners are just that.

**7.** I may grant, sua sponte, summary judgment for the non-moving party if there is no genuine issue of material fact and the uncontroverted facts support such a ruling. *In re Marvin Properties, Inc.,* 76 B.R. 150 (Bankr. 9th Cir.1987) *aff'd on other grounds,* 854 F.2d 1183 (9th Cir. 1988) citing *Portsmouth Square, Inc. v. Shareholders Protective Comm.,* 770 F.2d 866, 869 (9th Cir.1985).

estate and the Limited Partners' duty to convey them to the bankruptcy estate; or as to the Limited Partner's liability for alleged transfers from the Debtor's assets. He has also failed to raise a genuine issue of material fact as to the Limited Partners' liability to the estate under § 723(a).

The estate has no interest in or right to Parcel A or Parcel B; and, the Trustee is not entitled to an accounting as to payments received by the Limited Partners relating to that property or to any such payments themselves.

The Limited Partners are not general partners of the Debtor. And none of them, with the possible exception of WWFM and Wenz, are liable to the estate for any deficiency of property of the estate to pay allowed claims of creditors in this case.

Walters, WWFM [8] and Wenz have not established their entitlement to judgment in this proceeding on the question of their liability under § 723, and therefore their motions for summary judgment must be denied to that extent. Therefore, all the Limited Partners except WWFM and Wenz are entitled to judgment on the complaint as to all causes of action.

The foregoing constitutes my findings of fact and conclusions of law in this matter; and an order will issue accordingly.

---

**8.** Walters was replaced by WWFM as a general partner of the Debtor on February 16, 1988. WWFM may be liable for estate debts only to the extent of its interest in the Ridge. *In re Miramar Mall Limited Partnership*, 152 B.R. 631, 633 (Bankr.S.D.Cal.1993) (under California Corporations Code § 15017 a general partner is liable for partnership debts incurred before the general partner's admission to the extent of such partner's interest in partnership property). However, that has yet to be determined; and I mention it here solely to induce further consideration of that issue by the parties as this adversary proceeding continues on to trial.